# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 96-30982

---

LOCAL 889, AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, COUNCIL 17, ET AL.,

Plaintiffs,

versus

LOUISIANA, STATE OF, through the Department of Health and
Hospitals,

Defendant.

\*   \*   \*   \*   \*

AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, COUNCIL 17, ET AL.,

Plaintiffs,

RONALD A. ALFORD; WILBOURNE L. ANDERSON; RALPH
BENNETT; ROLAND J. BERTONIERE; THOMAS R. BRELAND;
TROY B. BRELAND; GILBERT J. BROWN, JR.; JOSEPH E.
CERNIGLIA; BARNEY CROSBY; GEORGE E. DENHAM;
TAMMY DUNCAN; SHELTON DYESS; JAMES L.DYKES;
EDWARD D. EMMONS; H. JACK FORBES; NEEDHAM RANKIN
FORBES, JR.; GLORIA G. FORTENBERRY; GUY D. HAMMOND;
PAUL W. HEBERT; QUITMON LANDRUM; TITUS R. LAWRENCE;
RONALD EARL LINDER; JOHN McELVEEN; PAUL W. MILLER;
GARY W. PARKER; WILEY JAMES PERNELL, JR.;HARRY L.
POWELL; JAMES RILEY; JERRY RODGERS; JOHN F. RUDOLPH;
RONNIE R. SEAL; GREG SLADE; DANNY W. SMITH;
GERALD SMITH; SHANNON STEWART; MICHAEL E. TODD,

Plaintiffs-Appellants/Cross-Appellees,

versus

STATE OF LOUISIANA, through the Department of Public Safety
and Corrections,

Defendant-Appellee/Cross-Appellant.

Appeals from the United States District Court
For the  Eastern District of Louisiana

June 25, 1998

Before POLITZ, Chief Judge, HIGGINBOTHAM and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Plaintiffs appeal the trial court's decision holding that: (1) the Fair Labor Standards Act (FLSA) is not violated by the State failing to pay overtime for a mandatory 15 minute roll call period, and (2) the State may first require an employee requesting leave to exhaust any compensatory time balance before annual leave is taken.  For the reasons assigned, we affirm in part, reverse in part, and remand.

## BACKGROUND

The State of Louisiana operates a prison known as Washington Correctional Center and employs guards, known as Correction Sergeants, who serve in various capacities.  The positions held by the Correction Sergeants have various working titles, including field officer and compound officer. "Field officer" and "compound officer" are more correctly described as work assignments rather than job titles.  A Correction Sergeant may work for a time as a field officer and then may be

2

assigned as a compound officer and vice-versa. Compound officers guard the cell blocks, discharging their duties in 12 hour shifts on a recurring, 14-day work cycle, which results in a work schedule in excess of 40 hours during the first seven days and less than 40 hours during the next seven days. When the hours are averaged over the 14-day period, the compound officers work 42 hours a week and are paid their regular hourly rate for the first 80 hours and time and one-half for the final four. The State has designated the four hours for which it pays cash overtime as "built in overtime." Any compound officer working over 84 hours in the 14-day period, receives compensatory time at the rate of time and one-half for every such additional hour.

Field officers work Monday through Friday with weekends off. Prior to a policy change in July of 1994, field officers where required to report to work fifteen minutes before the start of their shift for a "roll call" period. They were not compensated for this time but were subject to discipline if tardy or absent.

When a Correction Sergeant, or any other state employee for that matter, requests annual leave, it is the policy of the State to first use any outstanding compensatory time balance before charging the employee's annual leave account. This policy presumably is motivated by the federal requirement that once a certain number of compensatory hours are accumulated, the employee must receive

3

overtime pay for any excess. It is therefore financially advantageous to the State that employees timely utilize their compensatory time, thus obviating the need for overtime payments.

The plaintiffs brought the instant suit against the State, alleging that the practice of requiring employees to first exhaust their compensatory time balance when requesting annual leave, and the now long-terminated practice of having the uncompensated 15 minute roll call period violated the FLSA.

**ANALYSIS**

1. Uncompensated Roll Call Period

We first address whether the 15 minute roll call period for the field officers was compensable and, if so, at what rate. Despite earnest contentions by the State that the roll call period was offset by a compensated lunch period, the trial court found that period to be countable time. The court noted that field officers were required to eat lunch in the cafeteria with the inmates and were required to standby, ready to react to any disturbance or other need. As this factual finding is not clearly erroneous, the only question for our resolution is the rate of compensation, if any, that is required.[1]

The plaintiffs contend that the State owes overtime compensation for roll call

---

[1]FED.R.CIV.P. 52(a).

which regularly added 15 minutes per day to their 40 hour work week. The State maintains that in the event that any compensation is due, overtime is not owed because the employees are law enforcement officers and that 29 U.S.C. § 207(k) has established higher ceilings on the maximum number of hours which can be worked before overtime has to be paid. The plaintiffs contend that section 207(k) does not apply to this case because the provision was not expressly adopted by the State which has made a practice of paying compound officers time and one-half for every hour worked over 80 in a two week pay period. Therefore, the plaintiffs insist that the field officers should be paid overtime for the 15 minute roll call periods.

As a general rule, overtime is owed for a work week longer than 40 hours. 29 U.S.C. § 207(a)(1) of the FLSA provides that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

In order to ameliorate the manifest adverse effect of this provision on public

5

agencies responsible for providing vital public services, Congress enacted section 207(k), authorizing state and local governments to calculate, for overtime purposes, the average number of hours worked over a maximum 28 day period, instead of the usual seven-day work week. Section 207(k), and the Code of Federal Regulations, also establish somewhat higher ceilings on the maximum number of hours worked before overtime must be paid. Section 207(k) provides in pertinent part: "No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee . . . in law enforcement activities (including security personnel in correctional institutions)" so long as overtime is paid for every hour worked over 42 hours in one week, or in the case of a special work period established by the state, 86 hours in a two week period.

The State claims that it adopted a 14-day work period and, therefore, overtime pay is not owed for the 15 minute roll call period because the total time worked in that period never exceeded 86 hours. The trial court found that the State would be entitled to claim the section 207(k) exemption for the plaintiffs because it is clear that security personnel in a correctional institution are covered thereby.

The adoption by the State of a 14-day work period is reflected by its practice of paying overtime only for hours worked over 80 during a two week pay period. Compound officers work 60 hours during one week of each pay period and 24

hours the other week. The State, in its Wage Compensation Manual, notes that "[w]ithout the [20]7k exemption the week with 60 hours would have to be counted as 20 hours of overtime." This obviously has not been done, demonstrating that the state unquestionably has availed itself of the section 207(k) exemption. The compound officers are not paid for 40 hours straight time and 20 hours at the overtime rate during the week they work 60 hours. Rather, during the two week period they are paid for 80 hours straight time and four hours overtime.

While the State's practice of averaging the number of hours worked by compound officers over a 14-day period illustrates that it has availed itself of certain provisions of 207(k), its practice of paying cash overtime to compound officers after 80 hours in the 14-day period illustrates that it has not opted to avail itself of the portions of 207(k) providing a higher ceiling on the number of hours worked before overtime is due. Section 207(k) requires overtime payment only after 86 hours in the 14-day period. The State has done that which it was not required to do. It has averaged the hours for the two weeks and paid overtime for all hours over 40 in each week. Plaintiffs maintain that this results in a forfeiture of the benefits of section 207(k). We do not agree. The State is not to be punished for doing more than the statute requires. Although we are persuaded that section 207(k) is the standard by which overtime is to be calculated for employees engaged

7

in law enforcement activities, the decision by the State to pay overtime sooner than mandated is not to be taken as a forfeiture or rejection of the privilege granted to state and local authorities by the Congress in section 207(k). However, as the departmental regulations provide for payment of overtime for all hours over 40 in each week of the two week period, and because these regulations do not distinguish between compound officers and field officers, we can only assume that the State has agreed to pay overtime to all Correction Sergeants, regardless of job assignment.[2] Therefore, the field officers were entitled to overtime compensation, either in the form of cash overtime or compensatory time, for the now-terminated 15 minute roll call periods.

2. Compensatory Time Issue

The other issue posed by this appeal is whether it is an FLSA violation for the State to first deduct compensatory time when an employee requests annual leave. Of particular relevance to this inquiry is the interplay between annual leave and compensatory leave, the latter being sometimes referred to as "k-time."

---

[2]As noted above, the State has chosen to pay compound officers time and one-half for every hour worked over 80 during a two week period although it is not legally obligated to do so. Based on this and other evidence in the record now before us, we are persuaded that the State's failure to pay for the roll call period was not a willful violation of the FLSA. The two year statute of limitations should apply to this action. 29 U.S.C. § 255.

Annual leave, commonly referred to as vacation leave, is accrued by the employee at a rate as determined by the State Civil Service Rules. Compensatory time is earned by employees who work beyond their regular hours any day during a pay period. There are two types of compensatory time. If employees work overtime hours they earn "payable k-time" and receive time and one-half pay for each overtime hour worked. "Non-payable k-time" is earned when an employee works additional hours but does not exceed 40 hours during the pay period. For example, employees would earn non-payable k-time if they worked on a state holiday, receiving one hour of compensatory time for each hour worked on the holiday. Compensatory time and annual leave are itemized separately on the employees' pay records and check stub.

It is the practice of the State to first deduct compensatory time when an employee requests annual leave. If there is not sufficient compensatory time available to cover the leave request, the State will then deduct time from the employee's accrued annual leave. The plaintiffs maintain that this practice violates the FLSA.

The plaintiffs contend that the language of the FLSA, as recognized by the Eighth Circuit's opinion in **Heaton v. Moore,**[3] requires that the employee have

[3]43 F.3d 1176 (8th Cir. 1994).

control over which account is deducted when annual leave is requested. The relevant provision of the FLSA, 28 U.S.C. § 207(o)(5) provides in part:

> An employee . . . who has accrued compensatory time . . . **and** . . . **who has requested the use** of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency. [emphasis added]

Relying on this language and the Eighth Circuit's holding in **Heaton**, plaintiffs contend that Title 29 creates a property right in k-time which is under the dominion of the employee. In **Heaton**, the court held that it violated the FLSA for an employer to force its employees to take compensatory time.[4] The facts in **Heaton**, however, differ from those presented in the instant case. The **Heaton** court was confronted with a situation where the employer would force corrections officers to take compensatory time whenever their time balances reached 100 hours. In the case at bar, the State does not force its employees to take time off. Rather, when an employee asks for time off the State first deducts the time from the employee's compensatory time balance before debiting annual leave. While we do not necessarily agree with the Eighth Circuit's holding in **Heaton**, however, this essential distinction makes its holding inapplicable to the instant case.

_____

[4] 43 F.3d at 1180.

There is no real difference between earned compensatory time and earned annual leave. Each give the employee time off with pay. When an employee requests time off it should not matter which type of leave is used. The employee may prefer to use annual leave rather than compensatory time in hopes that the State will have to pay some cash overtime.[5] While this desire is understandable, it is inconsistent with the prime purpose of compensatory time.

In 1985, the Supreme Court in **Garcia v. San Antonio Metropolitan Transit Authority**[6] overruled **National League of Cities v. Usery**[7] and held that the FLSA was applicable to the states and was not violative of any provision of the Constitution. The decision sparked great debate, largely due to fears that compliance with the FLSA would cause financial hardship to state and municipal governments. There was significant discussion in the halls of Congress for an amendment exempting governmental agencies from the Act. Rather than creating such a broad exemption, a compromise was fashioned by which Congress endorsed and sanctioned the practice, in use in many states, of granting compensatory time

---

[5]The employer must pay cash overtime once the employee's compensatory time balance reaches the statutory cap. The limit for public safety employees is 480 hours and the limit for all other employees is 240 hours. 28 U.S.C. § 207(o)(2).

[6]469 U.S. 528 (1985).

[7]426 U.S. 833 (1976).

off for overtime work.[8]

By amending the FLSA to permit compensatory time, Congress intended to prevent undue hardship to public employers which might result from being required to pay significant cash overtime to its employees.[9]  Public employers, unlike their private sector counterparts, do not have the luxury of being able to pass along overtime pay to the consumer.  Rather, they typically are dependent on the taxpayer for each dollar spent.  Cognizant that many communities faced high tax burdens, Congress was persuaded to give state and municipal governments the flexibility of utilizing compensatory time in preparing schedules for providing essential public services.

The purpose of the 1985 amendment to the FLSA would be greatly impeded if employees were allowed to "bank" their compensatory time and force their public employers to pay cash overtime.  We are not persuaded that section 207(o) was designed to create new property rights in the employee.  To the contrary.  The trial judge perhaps described it best when he wrote:

> K-time is essentially a voluntary bargain between the

---

[8]*See e.g.* 131 CONG. REC. 29,774 (1985) (statement of Rep. Porter); 131 CONG. REC. 28,503 (1985) (statement of Sen. Cranston).

[9]*See* S.Rep. No. 159, 99th Cong. 1st Sess. 7-8 (1985), *reprinted in* 1985 U.S.C.C.A.N. 651.

employer and the employee that gives each side something valuable. The employee gets additional time off from the job with pay, and the employer is relieved of the financial burden of paying cash overtime wages. If the court were now to allow employees to "bank" k-time hours until they reached the statutory limit which would require cash compensation, that result would upset the delicate balance reached by Congress when it created 207(o) in 1985, and practically nullify the purpose of the statutory scheme.[10]

We are not here presented with a situation where the State forces employees to take time off. If the employee wishes to be paid cash overtime, the employee need not take any time off. Instead the employee may "bank" the compensatory time along with the annual leave. When the compensatory time reaches the statutory cap the State will be forced to pay cash overtime. In sum, and dispositive of the second question posed today, we do not perceive that the State's practice of requiring an employee requesting leave to first use accumulated compensatory time before taking annual leave to be violative of the FLSA. We now so conclude and hold.

The judgment appealed is REVERSED and REMANDED as it pertains to the claims for payment for the uncompensated roll call period. Otherwise, the judgment appealed is AFFIRMED.

---

[10]**AFSCME v. Louisiana**, No. 90-4389 (E.D. La. January 12, 1996).